HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WING KAI TSE,

    Plaintiff,

v.

UNITED FOOD AND COMMERICAL WORKERS UNION, LOCAL 367,

    Defendant.

CASE NO. C13-746RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss by defendant United Food and Commercial Workers Union, Local 367 (the "Union"). Dkt. # 4. *Pro se* plaintiff Wing Kai Tse appears to allege the following causes of action: (1) Violation of the National Labor Relations Act ("NLRA"), § 8(b)(3) & (4), 29 U.S.C. § 158(b)(3) & (4); (2) Violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60 et seq.; and (3) racial discrimination or conspiracy to violate civil rights under 42 U.S.C. §§ 1981, 1983, 1985. Dkt. # 1.

As a preliminary matter, Mr. Tse cannot bring claims on behalf of someone else in his *pro se* capacity. *See Johns v. Cnty of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (*pro se* party "has no authority to appear as an attorney for others than himself.").

Accordingly, the court GRANTS defendant's motion with respect to any claims brought on behalf of Mr. Wu.

Having considered the pleadings, briefing, exhibits, and the record herein, the court GRANTS defendant's motion to dismiss.

## II. BACKGROUND

Plaintiff, an individual of Chinese national origin, worked for a grocery store owned by Haggen Inc. from November 2002 until October 2008. Dkt. # 1 (Compl.) ¶¶ 4-5. As an employee of Haggen, plaintiff was a member of the Union. *Id.* ¶ 7. The Collective Bargaining Agreement ("CBA") required that the employer provide laundering of the required uniforms for the employees. *Id.* ¶ 24. However, when plaintiff began work in November 2002, he was required to sign an agreement in which he agreed to launder his uniform. *Id.* ¶ 31. Plaintiff alleges that every employee was required to sign a similar agreement, but that Haggen laundered the uniform of other workers in the meat and bakery department and the head cook of the Orient Express department where he worked, but continued to refuse to launder the uniforms of the Chinese cooks. *Id.* ¶¶ 34-35. Plaintiff also alleges that beginning in June 2006, Haggen mandated the Chinese cooks at his store to do arduous and excessive amounts of heavy lifting, moving, transporting, and stocking of weighty items, and that in June 2008, the arduous tasks became his responsibility. *Id.* ¶¶ 36-37.

Around May or June 2008, plaintiff initiated an EEOC complaint against Haggen regarding the uniform and arduous task issue. *Id.* ¶ 38. From August 2008 to approximately November 2008, the Union appears to have taken action with respect to plaintiff's complaints. *Id.* ¶¶ 43-49. Plaintiff alleges that the Union's period of inaction began in November 2008 and continued through its filing of an unfair labor practice charge against Haggen in February 2009. *Id.* ¶¶ 56, 58. Plaintiff alleges that a letter from the Union around January or February 2009 "clearly indicated that the union's

noncommittal position favored the employer by default in all issues immediately after [his] separation from employment."[1] *Id.* ¶ 56 (emphasis omitted).

With respect to the unfair practices labor charge filed by the Union in February 2009, plaintiff alleges that the Union notified him of the revised charge form in April 2009, and that he received no other information about it. *Id.* ¶ 59. In August 2009, plaintiff received a letter from the Union that it was closing his file. *Id.* ¶ 62. In March 2010, plaintiff sent a letter to the Union inquiring about the status of the unfair practices labor charge, but he did not receive a response. *Id.* ¶ 64. In May 2010, plaintiff sent a letter to Region 19 of the National Labor Relations Board ("NLRB"), inquiring about the status of the charge. *Id.* ¶ 65. On May 6, 2010, Region 19 responded to plaintiff that Haggen had reached a private agreement with the Union in April or May 2009, so the Union withdrew the charge. *Id.* ¶ 66. Plaintiff alleges that May 6, 2010, is the date he discovered that the union withdrew the labor charge. *Id.*

## III. ANALYSIS

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998). However, the complaint must indicate more than mere speculation of a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]or a complaint to survive a

---

[1] The court notes that the February 5, 2009 letter from the Union to Tse does not support plaintiff's conclusory characterization of the letter. Rather, the letter notes that the Union has disputed the employer's conclusion that Tse voluntarily resigned, and that the Union believed the uniform laundering issue had merit, which is why it was initially pursued. Dkt. # 7-2 at 22 (Ex. 9K022). The letter also notes that after the Union filed a grievance, the employer began laundering chef coats and provided additional chef coats and pants for employees. *Id.* The Union concluded that a neutral arbitrator is likely to find that the employer has taken reasonable corrective action to remedy any discriminatory treatment by providing the coats, pants, and laundering. *Id.* A review of the remainder of the letter also does not support plaintiff's conclusory characterization of the letter.

ORDER- 3

motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). This court holds the pleadings of *pro se* complainants to less stringent standards than those of licensed attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, every complainant must demonstrate some claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The court generally may not consider material beyond the pleadings in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, where documents are referenced extensively in the complaint, form the basis of plaintiffs' claim, or are subject to judicial notice, the court may consider those documents in the context of a motion to dismiss.[2] *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).

**A. NLRA claim**

"The NLRA is enforced primarily through actions of the NLRB—private actions are available only in exceptional circumstances." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1067 (9th Cir. 2004); *see N.L.R.B. v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 118-22 (1987) (explaining process to resolve unfair practices complaints). The Supreme Court has found implicit in the NLRA a private

---

[2] Plaintiff has provided a number of exhibits in support of his opposition. To the extent that the documents are referenced in the complaint, form the basis of his complaint, or are subject to judicial notice, the court has considered them. Additionally, the court has reviewed all of the exhibits for the purpose of determining whether the court should grant leave to amend.

ORDER- 4

cause of action against unions to enforce their duty of fair representation. *Karahalios v. Nat'l Fed'n of Fed. Emps.*, 489 U.S. 527, 535 (1989). Under the NLRA, the statute of limitations for a breach of the duty of fair representation by an employee against a union is six months. *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 172 (1983). The six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

Plaintiff alleges that the Union's period of inaction began in November 2008 and continued through its filing of an unfair labor practice charge against Haggen in February 2009. *Id.* ¶¶ 56, 58. Plaintiff alleges that a letter from the Union around January or February 2009 "clearly indicated that the union's noncommittal position favored the employer by default in all issues immediately after [his] separation from employment." *Id.* ¶ 56 (emphasis omitted). Plaintiff also alleges that, between April 2009 and August 2009, the Union failed to inform him of the status of the unfair practices labor charge, prevented him from obtaining such information, and failed to respond to an inquiry about the status that he sent in March 2010. *Id.* ¶¶ 59, 63, 64. In opposition, plaintiff asserts that the discovery of the Union's failure to provide fair representation occurred in May or June 2010. Dkt. # 7 at 4 ¶ 13.

Even if the court took plaintiff's actual date of discovery, rather than the date he should have discovered the breach, plaintiff did not file this lawsuit alleging a breach of the duty of fair representation until April 29, 2013, nearly three years later. Accordingly, plaintiff's NLRA claim for breach of the duty of fair representation is barred by the six-month statute of limitations. The court dismisses this claim with prejudice.

**B. WLAD claim**

The WLAD prohibits a union from discriminating against any member to whom a duty of representation is owed on the basis of national origin, among others. RCW

46.60.190(3). The parties have not cited, and the court is not aware of, any Washington courts that have determined the scope of union liability. Given that the WLAD is patterned after Title VII, Washington courts have looked to federal law for guidance. *See Glasgow v. Georgia-Pacific Corp.*, 103 Wash. 2d 401, 406 n.2, 693 P.2d 708 (Wash. 1985) ("Interpretations of Title VII, § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1982) are not binding on this court, but are instructive and lend support to our decision herein."). The court believes that Washington courts would apply Title VII's framework for a union's scope of liability, and applies it here. *See Woods v. Graphic Commc'ns*, 925 F.2d 1195, 1199 (9th Cir. 1991). Under Title VII, a union may be liable in several ways for workplace discrimination: (1) intentionally failing to file a grievance concerning a racially hostile work environment;[3] (2) acquiescing in a racially discriminatory work environment; and (3) discriminating against a member, including overt acts by union officials. *Id.* at 1200-01. With respect to the second, the "union has an affirmative obligation to oppose employment discrimination against its members. If instead it acquiesced or joined in the Company's discrimination practices, it too is liable to the injured employees." *Id.* at 1200. With respect to the third, if a union assumed responsibility for preventing discrimination in the terms and conditions of employment, the same reasons that prohibit an employer from discriminating on the basis of national origin apply equally to the union. *Id.* at 1201.

Here, plaintiff alleges that Haggen refused to launder Chinese cook's uniforms while laundering the uniform of other individuals in the meat and bakery departments and the uniform of the head-cook of the Orient Express department. Dkt. # 1 (Compl.) ¶ 35. Plaintiff also alleges that Haggen unfairly mandated the Chinese cooks to do an arduous and excessive amount of heavy lifting. *Id.* ¶¶ 36-37. Plaintiff also alleges that the

---

[3] Plaintiff has not alleged a claim for intentionally failing to file a grievance for hostile work environment.

Haggen imposed restrictive disciplinary actions and micromanaged the Chinese cooks. *Id.* ¶ 46. However, all of these allegations are with respect to Haggen's conduct. Plaintiff makes no allegations against the Union that connects any of the Union's acts to alleged discrimination on the basis of national origin. Additionally, the evidence submitted by plaintiff demonstrates that the Union raised plaintiff's discrimination allegations against Haggen, rather than acquiesce. *See* Dkt. # 7-2 at 4 (Ex. 9K004) ("The fact that the policy enclosed is directed specifically to Oriental Express members, who are predominantly of Asian descent, is discriminatory on its face and in its application, and is also in blatant disregard [of the nondiscrimination provision of the CBA]"). Similarly, there are no allegations in the complaint, or evidence submitted by plaintiff, that the Union's conduct altered the terms and conditions of plaintiff's employment, or otherwise discriminated against him on the basis of national origin.[4]

Accordingly, the court finds that plaintiff has failed to state a claim for violation of the WLAD against the Union. After a review of the evidence submitted by plaintiff, the court also finds that it would be futile to allow plaintiff to amend his complaint with respect to his WLAD claim, and therefore dismisses this claim with prejudice.

**C. Section 1981, 1983 & 1985 claims**

Section 1981 prohibits discrimination in making and enforcing contracts by reason of race. 42 U.S.C. § 1981. "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship[.]" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 480 (2006).

---

[4] Tse refers the court to two letters from July 2010 regarding two other employees. Dkt. # 7 at 4 ¶ 17 (citing Exhibits 87-90). Mr. Tse cannot represent other employees. Additionally, those letters are the Union's response to the EEOC regarding charges of racial discrimination on the part of the Union made to the EEOC by Siu Wu and Sing Cho Ng. There are no factual allegations supporting the charge of discrimination in those letters, only the Union's defense to such charges.

Here, plaintiff has not provided any factual allegations of overt acts by the Union or of defendant's conduct being motivated by racial animus. *See Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989). Plaintiff has not plausibly alleged a claim that the Union intentionally discriminated against him on account of his race.

To state a claim under section 1983, a defendant must act under color of state law. 42 U.S.C. § 1983 ("under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia"). Plaintiff provides the conclusory allegation that "the union was acting under the color of the Washington state law." Dkt. # 1 (Compl.) ¶ 84. However, the court need not take conclusory allegations as true. There are no facts that would suggest that the Union is a state actor, rather than a private entity. Accordingly, plaintiff has not plausibly alleged a section 1983 claim against the Union.

To state a claim under section 1985, plaintiff must allege that (1) defendant engaged in a conspiracy (2) for the purpose of depriving plaintiff of the equal protection of the laws, that (3) one or more of the conspirators took action in furtherance of the conspiracy, and that (4) plaintiff was injured or deprived of a right or privilege of citizenship. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). The second element, intent to deprive the plaintiff of equal protection of the laws, requires allegations of some racial or class-based invidious discrimination. *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985). A mere allegation of conspiracy without factual specificity is insufficient. *Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).

Here, plaintiff has not alleged the factual basis to support his conclusory allegations of conspiracy. Nor has plaintiff alleged that the Union had some racial or class-based animus. Rather, plaintiff's own exhibits indicate that the Union filed grievances on plaintiff's behalf and specifically highlighted discriminatory conduct by Haggen that needed correction. Having reviewed plaintiff's exhibits in support of his opposition, the court believes that any amendment would be futile. Accordingly, the court dismisses these claims with prejudice.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS defendants' motion to dismiss. Plaintiff's claims are DISMISSED with prejudice. The Clerk is DIRECTED to enter judgment in favor of defendant and against plaintiff.

Dated this 19th day of February, 2014.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge